```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - :
YONG WONG PARK,                            : 05 Civ. 0693 (JSR)(JCF)
                                           :
                Petitioner,                :     REPORT AND
                                           :     RECOMMENDATION
      - against -                          :
                                           :
UNITED STATES OF AMERICA,                  :
                                           :
                Respondent.                :
- - - - - - - - - - - - - - - - - - - - - :
TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:
```

This case presents the question of what duty criminal defense counsel owes to a non-citizen client. Yong Wong Park, a Korean national, petitions for a writ of error coram nobis to vacate his conviction for trafficking in counterfeit goods. Mr. Park alleges that his guilty plea was unconstitutional because it was the result of ineffective assistance of counsel. The petitioner claims he would not have pled guilty if he had known that it would result in his deportation. For the reasons that follow, I recommend that Mr. Park's petition be denied.

Background

In February 2000, Mr. Park pled guilty to trafficking in counterfeit goods. (Affidavit of Yong Wong Park, dated January 6, 2005 ("Pet. Aff."), ¶ 2). Based on all relevant sentencing factors, the petitioner's plea resulted in a sentencing range of 21 to 27 months. (Letter of Marcia S. Cohen dated April 27, 2005 ("Cohen Letter") at 3). The Honorable Jed Rakoff, U.S.D.J. accepted Mr. Park's plea and sentenced him to 21 months of

1

imprisonment, followed by two years of supervised release. (Plea Allocution, dated February 18, 2000 at 14, attached as Exh. 1 to Cohen Letter; Sentencing Transcript dated July 5, 2000 ("Sent. Tr.") at 14-15, attached as Exh. 3 to Cohen Letter). Judge Rakoff also imposed as a special condition of supervised release that Mr. Park cooperate with the Immigration and Naturalization Service (the "INS") in any proceedings regarding his status in the United States. (Sent. Tr. at 16).

In July 2001, Mr. Park filed a pro se writ pursuant to 28 U.S.C. § 2255, alleging that his sentence should be set aside due to improper venue, jurisdictional defects, and ineffective assistance of counsel because his attorney failed to raise these defenses. (Cohen Letter at 6). Judge Rakoff denied that application. Since that time, Mr. Park has completed serving his sentence. (Petitioner's Memorandum of Law ("Pet. Memo."), at 3).

On March 27, 2002, the INS commenced deportation proceedings against Mr. Park in New Jersey, alleging that he had committed a crime involving moral turpitude. (Pet. Memo. at 4). An alien found to have committed such a crime is deportable, but may also receive discretionary relief from deportation. 8 U.S.C. §§ 1227(a)(2)(A)(i), 1229b. On July 15, 2004, however, the INS changed its asserted basis for Mr. Park's deportation by alleging that he had committed an aggravated felony. (Pet. Memo. at 4). Under current immigration law, aggravated felons cannot receive
2

discretionary relief from deportation.  8 U.S.C. § 1229b(a)(3).
Due to the nature of Mr. Park's crime and the length of his
sentence, he was found to have committed an aggravated felony, and
a final order of removal was entered.[1]  (Pet. Memo. at 4).

Mr. Park now seeks to overturn the conviction on which his
deportation is based through an application for a writ of error
coram nobis.  Mr. Park's affidavit alleges that his attorneys,
Daniel Becker and Joseph Ferriero, did not advise him that he could
be subject to removal as a consequence of his conviction on a plea
of guilty.  (Pet. Aff., ¶ 2).  Rather, they informed him that he
would not be deported because he had paid his taxes for five years,
had a "green card" (i.e., was a lawful permanent resident), and had
family members who were United States citizens.  (Pet. Aff., ¶ 2).
The petitioner claims he would not have pled guilty if he had known
it would result in his removal because he has lived in this country
for over 20 years, his wife and children have no roots in Korea,
and his family members would be unable to support themselves
without his income.  (Pet. Aff., ¶ 3).  I held an evidentiary
hearing on July 7, 2005 to evaluate of Mr. Park's factual
allegations.

At this hearing, Mr. Park testified that he first asked his

---

[1] Mr. Park has appealed the INS findings.  His deportation has been stayed pending review by the Third Circuit.  (Stay of Removal, dated May 17, 2005, attached to Letter of Raymond Aab dated May 17, 2005).

criminal defense counsel, Mr. Becker, about the deportation consequences of his plea one week before it was entered. (Tr. at 97).[2] In contrast to the sworn statements in his affidavit, the petitioner now claims that Mr. Becker did not provide him with any advice on the topic and instead told him to speak with an immigration lawyer or with Mr. Ferriero, who was Mr. Park's counsel in a related civil matter and a member of the same law firm. (Tr. at 102-03). Mr. Park went on to testify that, shortly before his plea, he spoke with Mr. Ferriero, who assured him there would be no immigration consequences. (Tr. at 99-100).

The respondent, on the other hand, produced evidence that Mr. Park raised no concerns about deportation until several months after he pled guilty. Neither Mr. Becker nor Mr. Ferriero have any recollection of Mr. Park inquiring about removal prior to his plea. (Tr. at 7, 41). When asked what their responses would have been had Mr. Park raised the question, both attorneys testified that they would not have provided him with an answer since they were not familiar with immigration law. (Tr. at 21, 54).

Several memoranda exchanged between Mr. Park's lawyers in September 2000 -- seven months after the plea -- were also offered into evidence. In the first such communication, dated September 11, 2000, Mr. Ferriero alerted Mr. Becker's successor, Lori Grifa,

---

[2] "Tr." refers to the transcript of the evidentiary hearing held on July 7, 2005.

4

that the petitioner was not a citizen of the United States. (Pet. Exh. A). Mr. Ferriero recognized that this could have deportation consequences. (Pet. Exh. A). Ms. Grifa responded to Mr. Ferriero's concerns on September 18, 2000. (Pet. Exh. B). She wrote that she did not think that Mr. Park fell within the criteria for deportation and, in the event that the INS did seek to deport him, he would be eligible to seek cancellation of removal. (Pet. Exh. B). Ms. Grifa further explained her research in an e-mail dated September 26, 2000. (Resp. Exh. 3). In her opinion, Mr. Park had not been convicted of an aggravated felony but could be found to have committed a crime involving moral turpitude. (Resp. Exh. 3). She wrote, however, that Mr. Park was unlikely to face removal because the crime was committed substantially after he had been admitted to the United States and because his family circumstances would qualify as extreme hardship, meriting discretionary relief. (Resp. Exh. 3). No evidence was presented to show what precipitated this exchange or when, if ever, Mr. Park was informed of his counsel's legal opinions. Mr. Park alleges that these intra-office communications were fabricated or post-dated to cover up his counsel's previous errors. (Tr. at 125).

Discussion

A. Coram Nobis

Where extraordinary circumstances are present, a district court may issue a writ of error coram nobis pursuant to the All

5

Writs Act, 28 U.S.C. § 1651(a). See <u>Nicks v. United States</u>, 955 F.2d 161, 167 (2d Cir. 1992). However, the proceedings leading to the conviction are presumed to be correct, and the burden rests on the petitioner to show otherwise. See <u>United States v. Morgan</u>, 346 U.S. 502, 512 (1954); <u>Nicks</u>, 955 F.2d at 167.

To obtain coram nobis relief, a petitioner must demonstrate: (1) compelling circumstances requiring such a remedy in order to achieve justice; (2) sound reasons for the failure to seek appropriate relief earlier; and (3) continuing legal consequences from the conviction that may be remedied by granting the writ. See <u>Fleming v. United States</u>, 146 F.3d 88, 90 (2d Cir. 1998); <u>Foont v. United States</u>, 93 F.3d 76, 79 (2d Cir. 1996).

Where a conviction is based on a plea obtained in violation of the Constitution, coram nobis relief may be warranted. See <u>Foont</u>, 93 F.3d at 79 ("An error of constitutional dimension at the time of a plea or sentence renders a conviction voidable[.]"). For Mr. Park to receive this remedy, however, he must prove that his plea was in fact the result of ineffective assistance of counsel, that his delay in seeking the writ was reasonable, and that deportation is a legal consequence that merits this extraordinary remedy. Since Mr. Park does not meet his burden of proving ineffective assistance, I need not address the other issues.

    B. <u>Ineffective Assistance of Counsel</u>

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme

Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Then, he must demonstrate "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. This test is also used to evaluate guilty pleas based on ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 58 (1985); United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002).

For many decades, the Second Circuit has viewed deportation as a collateral consequence of a criminal conviction. See United States v. Parrino, 212 F.2d 919, 921 (2d Cir. 1954). As such, a defense attorney's failure to inform his client of the deportation consequences of a plea has not been considered grounds for finding ineffective assistance of counsel. See United States v. Santelises, 509 F.2d 703, 704 (2d Cir. 1975)(per curiam).

In recent years, however, several commentators have argued that counsel's failure to warn an alien client of the deportation consequences of a plea is objectively unreasonable. See, e.g., Gabriel J. Chin & Richard W. Holmes, Jr., Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L. Rev. 697 (2002); Guy Cohen, Note, Weakness of the Collateral Consequences Doctrine: Counsel's Duty to Inform Aliens of the Deportation Consequences of Guilty Pleas, 16 Fordham Int'l L.J.

7

1094 (1993). Many of these observers have been motivated by recent changes in the immigration laws that increase the number of crimes that qualify for deportation while severely limiting the availability of discretionary relief. See, e.g., Rob A. Justman, Note, The Effects of AEDPA and IIRIRA on Ineffective Assistance of Counsel Claims for Failure to Advise Alien Defendants of Deportation Consequences of Pleading Guilty to an "Aggravated Felony", 2004 Utah L. Rev. 701 (2004); Lea McDermid, Comment, Deportation is Different: Noncitizens and Ineffective Assistance of Counsel, 89 Cal. L. Rev. 741 (2001). As a result, deportation has begun to resemble an unavoidable direct consequence of criminal convictions more than an uncertain collateral consequence. See, e.g., Couto, 311 F.3d at 189-90 (characterizing argument as persuasive and deserving of careful attention).

A number of state courts have moved away from treating deportation as a purely collateral consequence of criminal convictions. For example, the Oregon Supreme Court has held that "failure of counsel to request from the court a recommendation against deportation where the defendant, in fact, was subject to deportation as a result of his conviction rendered counsel's assistance constitutionally inadequate." Lyons v. Pearce, 694 P.2d 969, 978, 298 Or. 554, 568 (1985). The Colorado Supreme Court has said, "[W]hen defense counsel in a criminal case is aware that his client is an alien, he may reasonably be required to investigate

relevant immigration law." People v. Pozo, 746 P.2d 523, 529 (Colo. 1987) (citation omitted). Similarly, the California Court of Appeal has held that counsel's failure to adequately investigate federal immigration law after a client asks about the deportation consequences of a plea is ineffective assistance. See People v. Soriano, 240 Cal. Rptr. 328, 336, 194 Cal. App. 3d 1470, 1482 (Cal. Ct. App. 1987).

The American Bar Association has also encouraged counsel to investigate more thoroughly a client's immigration status. The ABA Standards for Criminal Justice state that defense counsel should fully advise their clients of the deportation consequences they will face as a result of a conviction. INS v. St. Cyr, 533 U.S. 289, 323 n.48 (2001) (citing ABA Standards for Criminal Justice, 14-3.2 Cmt., 75 (2d ed. 1982)). The ABA Model Rules of Professional Conduct also suggest that competent representation requires attorneys to investigate potential immigration consequences for their clients. See John J. Francis, Failure to Advise Non-Citizens of Immigration Consequences of Criminal Convictions: Should This be Grounds to Withdraw a Guilty Plea?, 36 U. Mich. J. L. Reform 691, 723 (2003) (citing ABA Model Rules of Prof'l Conduct R. 1.1 (1984)).

Drawing on these standards, the Supreme Court has stated that "competent defense counsel" would advise a client of the deportation consequences of his plea. St. Cyr, 533 U.S. at 323

9

n.50. Similarly, the United States Court of Appeals for the District of Columbia has observed that "it is extremely troublesome that deportation has never been considered a direct consequence of guilty pleas of the sort that must be brought to the defendant's attention before his plea may be considered voluntary[.]" United States v. Russell, 686 F.2d 35, 41 (D.C. Cir. 1982).

For its part, the Second Circuit has recognized that recent amendments to immigration law raise the possibility that deportation should be considered a direct consequence of a guilty plea. See Couto, 311 F.3d 188-90. The Circuit has also entertained the idea that its previous decisions in this area are inapplicable because their rationale no longer reflects the state of the law. Id. at 190.

Against this backdrop, the Circuit held that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable." Id. at 188. However, the Circuit has not yet reached the point of "reconsider[ing] whether the standards of attorney competence have evolved to the point that a failure to inform a defendant of the deportation consequences of a plea would by itself now be objectively unreasonable." Id. Until the Circuit does so, this Court is bound by existing precedent holding that failure to inform a defendant of the deportation consequences of his plea, standing alone, does not amount to ineffective assistance of counsel. See

10

id. at 187; Santelises, 509 F.2d at 704. Under this case law, Mr. Park's petition fails because he is unable to prove that an affirmative misrepresentation took place.

Mr. Park's testimony -- that, prior to his plea, he was told there would be no deportation consequences to his conviction -- is contradicted by all other evidence. Both Mr. Becker and Mr. Ferriero testified that they do not recall such conversations taking place at that time. Their recollections are supported by intra-office communications which show that Mr. Ferriero first learned about Mr. Park's immigration status in September 2000.

Mr. Park's speculation that these memoranda were fabricated by his former attorneys is unpersuasive. The law firm would have no discernible reason to do so. Indeed, the firm would be exercising curious logic if it decided to cover up its bad advice by making a record of that bad advice several months later. Mr. Park, on the other hand, has ample motivation to offer self-serving and inaccurate testimony. That Mr. Park's version of events has changed over time also undermines his credibility.

The evidence leads inexorably to the conclusion that Mr. Park was not affirmatively misled about the deportation consequences of his conviction prior to the time that he pled guilty. Mr. Park was not advised -- inaccurately or otherwise -- about the possibility of removal prior to his plea. If the petitioner was advised about deportation by defense counsel at all, any incorrect

11

advice he received was offered only after his plea was entered.

Since the petitioner has failed to demonstrate that he was affirmatively misled by counsel prior to his plea, he is unable to prove ineffective assistance, and he fails to demonstrate circumstances sufficiently compelling to warrant coram nobis relief. In the absence of such a showing, the writ should not be granted.

Conclusion

For the reasons stated above, I recommend that Mr. Park's petition for the writ of error coram nobis be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections with preclude appellate review.

Respectfully submitted,

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

12

Dated:    New York, New York
          August 9, 2005

Copies mailed this date to:

Raymond J. Aab, Esq.
Carol Kahn, Esq.
61 Broadway - 25th Floor
New York, New York  10006

Marcia S. Cohen, Esq.
Assistant United States Attorney
300 Quarropas Street
White Plains, New York  10601